case number 24-3107. United States of America v. Vincent Forrest appellant. Mr. Coburn for the appellant. Mr. Burney for the appellate. Good morning, counsel. Mr. Coburn, please proceed when you're ready. Thank you so much. May it please the court, Barry Coburn for the appellant, Vincent Forrest. We have only, I should have noted, with the court's commission, we'd like to reserve one minute for rebuttal. We have only one issue in this appeal and that issue is the insufficiency of the evidence. Just preliminarily, there was an argument that was made by the government, I think in a footnote in its brief relating to whether or not that argument has been preserved. There are several cases with respect to that question. There's a doctrine relating to this notion that if a Rule 29 motion is made below and there's a specific argument made, then if you make a different specific argument on appeal, that may be plain error. And I don't know that I need to or should spend much time on that right now, but our contention is that there's really no daylight between the argument that we made below, which referred specifically to the general orders and statutes that were alleged in the indictment that Mr. Forrest had violated versus the argument that we made here, which I believe, first of all, specifically encompasses that. And secondly, to the extent it refers to corruptness, the element of corruptness in bribery and as it relates to the conspiracy count, it's the same thing. I mean, whether or not the statute or general order is violated, that's what makes, according to the government's theory below, that's what makes the conduct corrupt, hence constituting bribery. So is it correct, Mr. Coburn, that when you made your, or when trial counsel made the motion for judgment of acquittal on the bribery and conspiracy count, he said, with respect to the other counts, particularly conspiracy and bribery, our argument is that there's insufficient evidence to prove that he violated an official duty. That seems like a different argument than what's being made now. That is essentially the argument, the argument your honor just presented that the government made in the footnote I referenced. I don't think it's different. In other words, from my point of view, the notion of the violation, the alleged violation of an official duty, that, like I said, that's what constitutes corruptness. First of all, I think we actually do refer in our opening brief to a violation of official duty. But aside from that, I mean, the focus certainly is on this question of whether or not the conduct below is provably corrupt. But that's the gravamen of it. That's what's at the heart of the notion of corruptness, at least as alleged. But is it the purpose of this rule to put the court and the other parties on notice of what you're arguing so that they can respond accordingly, both before the trial court and before this court? And it seems like the thrust of your arguments are different before the trial court versus this court, one being lack of knowledge, scienter, et cetera, and the other being specifically focused on official duty. I mean, certainly the way it's captioned, at least with respect to the question of corruptness in this court, we didn't use that word. I actually did a word search for it. So with respect to the argument that we made at the close of the government's case in chief, I don't believe the word corrupt appears in it. And so I take the court's point. Certainly with respect to that, it's phrased differently. But in terms of the actual substance of it, and I should, by the way, note, Your Honor, that I was the trial counsel below. I was. So my contention is that in terms of substance, in terms of, you know, sort of conveying the concept, it's essentially the same, that the thing that makes the conduct corrupt as alleged in the indictment is the alleged violation of a couple of different general orders and a couple of different statutes that are referenced. And so to the extent we argue below that there was no provable violation of those things, it is sort of, i.e., it's essentially the same as contending a lack of proof of corruptness. So turning then to the issue itself, substantively, whether or not there was sufficient evidence below, our contention, and I think I should start my argument by conceding something, which is that the most difficult fact that we have, which actually is referenced, I think, by the government only with respect to the false statements count, has to do with an exchange that occurred between Mr. Forrest and two law enforcement officers when he submitted to a voluntary interview before he was charged. And during the course of that exchange, there is, and I could find it if necessary, but there's a sort of a lengthy question that's put by one of the investigators relating to contact information. So he's asked whether, you know, did you provide blank contact information or something else to anyone else while you were, you know, reviewing this series of accident reports, and he answers no unambiguously to that question. So that's, I think that's kind of the central issue that we have to deal with. Because from my own point of view, and certainly it's not my intention to make the government's argument for them by any means, but I mean, there's at least an argument that if that statement is false, provably false, then it applies actually not just to the false statement count, but also to conspiracy and bribery. Because I mean, then there would be like sort of knowledge of wrongfulness and an attempt to conceal. And so I think I have to, you know, just kind of start by conceding that the key fact for us is that we don't view that statement in context, in the context of the exchange he had with law enforcement as inculpatory. And the reason is because Mr. Forrest testified, and certainly I should acknowledge, I mean, a jury has an absolute right to find a defendant or any witness incredible. I agree with that, no question about it. But here, his testimony about this question is the only evidence of record. He says, he thought, he says it was his understanding that what was being referenced during the course of this conversation with law enforcement was information that's, he uses different words, sensitive, confidential, private. Now, if there were something in the record to contradict that proposition, either in the exchange he had with law enforcement or anywhere else, then I concede we'd have a serious problem in this appeal. So let me point you to the record about his testimony. And there was a question from the, I guess the law enforcement officers. And I can understand how somebody could be in your position and then also think that this isn't that big a deal as far as giving out just traffic crash information to somebody else. And the answer was, that's a big deal because one, it's a violation of somebody's privacy. I don't want somebody, definitely a law enforcement officer, to be taking a report from me and for whatever reason, that going with third party. I mean, I don't even like telemarketers calling my freaking phone. That's a sure client. And then he was asked, so to provide somebody's private information, you know, I mean, it's a stretch, if you will. Question, so you understand it's against the law to do that, right? Answer, right, I understand that part. Question, it's illegal. Answer, right. Doesn't that very plainly show that he knew that this was illegal and unlawful and he shouldn't be doing that? I actually have that very segment right in front of me right here from the transcript of his interview with law enforcement. And my contention is that it's actually the opposite. That what's going on here during the course of this conversation is that he is essentially confirming the substance of his trial testimony, which is that he thought that only to the extent information in the possession of the District of Columbia and Metropolitan Police Department, only to the extent that information is private, is confidential, is it wrongful to disclose it? The use of the word private in the segment that Your Honor just and actually there are a few other segments. I think what Your Honor just read is on joint appendix, or rather, I'm sorry, supplemental appendix. No, it's joint appendix, page 251. He said, Mr. Coburn, I wouldn't want somebody taking a report from me and for whatever reason not going to a third party. He doesn't differentiate. It's just taking a report. And the question was just about crash information. That particular question and answer does not use the word privacy. I agree with that. But in context, my submission to Your Honor is that he has to be talking only about private information. He draws this distinction between and he actually in his own mind, you know, has a sort of a somewhat dated recollection of the, you know, the police department refers to forms by number, right? So he's talking about the PD251, which is public information, according to his understanding, his testimony, and the PD252, which is non-public information, which that's the information which he testifies he believes is private slash confidential. And he uses that terminology throughout the interview, just like Your Honor said, violation of privacy. And then on page 252 of the joint appendix, he says, I'm, you know, and he refers to confidentiality or for whatever reason, he refers on the same page to somebody's private information. And then again, right after he uses those words private information, he is asked by one of the officers, do you understand it is against the law to do that, right? And the that in that sentence refers to what he says just a the way he thinks about it. That's the information in the PD252, not in the 251. So you have to show that I understand your argument. Your argument is that he thinks everything's public anyway. And right, he has a different view of what all is out there in the public domain anyway. He thinks, I don't mean to interrupt Your Honor, but he thinks what's in the 251 is public and that that can be disclosed and there's no rule against it. He thinks what's in the 252, which includes contact information, other contact information, he thinks that's non-public and he can't disclose that. So his argument in when he testifies and also I think it's totally consistent with what's in the interview is that the 252 information, it's wrongful to disclose that the 251 information is public anyway, according to his understanding. And for you to prevail, you have to show that no rational jury could conclude that his understanding for that effect was not consistent with what he actually felt. I guess that's right. You know, my submission is that the problem the government has is that there's actually no contrary evidence. I mean, there's his testimony, which on that point in terms of his understanding is unrebutted. Again, like I said, the jury did not have to accept his testimony. They could look at him and say, I think you're incredible and you know, I don't believe you and so on. But there is no actual evidence contradicting him. There is no evidence contradicting the proposition that he thought at the time that the 251 information is public anyway and so anyone can disclose it to anyone else. The 252 information is confidential within the meaning of that word, which he uses repeatedly, repeatedly throughout his interview with law enforcement. So contact information for accident victims. He thinks that that's that's the type of public information you can disclose. And that's where that was the rub at trial. Exactly, Your Honor. I mean, when we talk about the government's theory, and I anticipate Mr. Bernie is going to say when he is at the podium, the government's theory is that contact information is like, you know, name, address, phone number. That information, according to Mr. Forrest's testimony, is in the 251. So that is just public information. Anybody could, you know, walk into the Metropolitan Police Department, pay, I think, $20 and get the 251. The 252 is confidential. That has other contact information. Is that in the 251 versus the 252? As a prosecutor, I believe that was in the 252. I actually was. I was too. And I have to confess, I don't remember the answer to that question as I stand here. But his testimony and the statement that he made to law enforcement is consistent with the proposition that the information he gave to Ms. DePaula was public and hence... And they were communicating by encrypted app. They were. And in one instance, he tells her that he told his supervisors that he had to catch up on some paperwork, lol. He does. And there's also another instance in which he says something like, if I remember the verbiage correctly, I'm not trying to get hot with it, something to that effect. And our contention is that, again, just in terms of whether or not a reasonable juror could have found guilt beyond a doubt here. I mean, that notion is at least as consistent with the proposition that he's doing something here that's not like what he's supposed to be doing as he sits in the office. I mean, it's not in his job description to be looking at accident reports out of idle curiosity or doing other things that a supervisor might deem to be time-wasting. And so his statement about that, the one that Your Honor just cited, and also not trying to get hot with it, is my submission is at least as consistent with a proposition that he's just not trying to get in trouble because of that, as opposed to doing something that he knows is the way to do it. But I mean, at least it's consistent, but it doesn't get you all the way home, because if there's two consistent ways of looking at it, then that doesn't mean that no rational jury could have disbelieved the version that you'd like. You know, I was in this court about three weeks ago, actually before Judge Pan on a different panel, and the same issue arose. And my understanding is that if there's a fact, and it's consistent with two inferences, and let's say they're equally compelling, one inference is non-inculpatory and another inference is inculpatory, that that's legally insufficient to sustain a conviction. That there has to be evidence— Do you have any authority for that? Because the standard is you view all the evidence in the light most favorable to the verdict. Unquestionably, Your Honor. Which means if there are two ways of looking at it, you look at it the inculpatory way. Well, I'm not sure that's right. I mean, I think— Not my face, Mr. Coburn. No, no, no, understood. There is case authority on it, and I feel awful about not having that case with me today. But my understanding is that the way the case authority operates is that there has to be evidence essentially moving a fact finder in the inculpatory direction. It doesn't have to be— Well, why wouldn't you bring this case, Mr. Coburn, when you know that we talked about this at your last argument? If you have that case, you need to bring it. I agree. It's my mistake, and I'm at fault there. I should have brought it. I agree. I don't think we cited it, actually, in this brief and should have done that as well. The case that sets the standard of review that allows you to prevail for your client. Point taken. I mean, certainly we cited cases on the general proposition of—and, of course, Judge Pan is 100 percent right. The evidence is reviewed in the light most to the government. We can't contest that. That's absolutely true. But if you have a piece of evidence which is equally susceptible to an inference that's inculpatory versus uninculpatory, my submission is that that's like no evidence at all. It doesn't push the fact finder in one direction or the other. It's not inculpatory. It's neutral, and neutral evidence cannot sustain a verdict. Okay. Let me make sure my colleagues don't have additional questions for you. Thank you. Thank you very much. Mr. Burnett. Good morning. May it please the Court, Kevin Burnett for the United States. I'd just like to start by clarifying that Appellant's brief seems to only challenge his mens rea in this case. And I think there was some confusion when Mr. Coburn was making his oral argument as to whether he was challenging whether Mr. Forrest had an official duty at all to maintain this information. And in our view, that does not present to this Court. Like, he has not made that argument here. So the only question here is whether he has acted abruptly, which was the focus of Mr. Coburn's arguments, and that goes to his mens rea. And so the question really then is, is there sufficient evidence that Mr. Forrest knew that he could not do this? So why were you so equivocal about the standard of review here? Because if before the district court, he argued public duty or official duty, and now he's arguing mens rea, shouldn't that clearly be a plain error standard of review? And why is that relegated to a footnote without any real argument as to choosing the better standard of review for you? Right. I think the evidence in this case is so strong from our point of view that it doesn't really matter whether this Court looks at it plain or otherwise. That may be true, but still, just for the sake of getting it right and understanding what you're supposed to be doing here, it struck me as curious that you would put that in a footnote and not actually take a position. Sure. Well, let me also be fair to you. I do think it is plain error, but let me be fair to the arguments that were made below just in the interest of getting it right. So just to be clear, you also said in the footnote, arguably, right? I mean, arguably, yes. It wasn't even a definitive. That's right. It wasn't even a definitive statement relegated to a footnote. It was a non-definitive statement relegated. That's right. But let me explain why that is just in full canter to the Court and to make sure we are getting it right. So the reason why I think it's arguable is because, as was noted during Mr. Coburn's argument, the vast majority of his Rule 29 motion, especially if you look at his motion before the defense case, is about this question of official duty. And that would be a very specific argument, right? But then after the defense case, after Mr. Forrest testifies, he then says, and this is on Supplemental Appendix 233, he's going to renew his Rule 29 motion, and he's just going to submit as to all counts. And that sort of general comment, I'm just sort of submitting as to all counts, I understand this Court's case law to say that could preserve a challenge, right? But I think here, where the context is that the vast majority of Mr. Coburn's argument below is about whether there's an official duty at all, that is really the specific grounds on which he was moving for acquittal. So that's why I say it's arguable. I think if you really read his arguments, he devotes many, many pages to this argument that there's no official duty relying on the general orders. But it is this brief remark on Supplemental Appendix 233 that can arguably preserve it for him. So I just wanted to be candid with the Court of why we phrased our footnote that way. But again, I don't think it matters. I don't think this Court needs to go down that road because there is so much evidence that Mr. Forrest did know that he couldn't do this and was therefore acting corruptly. And I would just focus on four main things. His admissions to the FBI, and I'm happy to discuss any of these in more detail, but his admissions to the FBI, which were already discussed ad nauseum with Mr. Coburn, the contents of the He's not trying to be hot with it. He's trying to hide it from his commander. He said he's doing paperwork, LOL. Remember, he's viewing these reports on his day off, which is very strange to begin with. The fact that he's responding to some unencrypted messages with encrypted messages. So DePaul is sending him just normal text messages. He's responding with encrypted messages indicating he wants to hide this conduct from others. And the fact that he's taking payment in cash, which is harder to trace. And when you add up all of that, I mean, I think it's extremely hard to say that no rational fact finder could know, could say that Mr. Forrest was acting corruptly here. I just want to, I guess, maybe make one point about his admissions to the FBI, because I think they are so important, both as to the false statement count, but as I think Mr. Coburn acknowledged, also the bribery count. And I think Judge Pan has already pointed this out, but just to be clear about it, on JA 251, the FBI begins this whole discussion by saying, I could understand why maybe you don't think it's a big deal as far as giving out just traffic crash information to somebody else. And then he says it is a big deal because it's a violation of somebody's privacy. So Mr. Coburn has made a big deal of this word private. He's using the word private when he's discussing stuff in his testimony or when he's discussing stuff in the interview. He is linking the two right here on JA 251. He is acknowledging that providing any traffic crash information to a third party is violating their privacy. It is not private. So I don't think that the mere use of the word private, even if it appears elsewhere in the interview, negates his admissions here. I also wanted to just talk very briefly about PD 251 and PD 252. That, and we discussed this in a footnote in our brief, that is not clearly established at trial. What that means, how it relates to electronic reports, how it relates to Mr. Forrest's use of electronic reports. In fact, the IAD, the internal affairs officer at MPD, states that they have not used those forms since around 2006 because they used them when they were printed out. But now they have the electronic database. Certainly there is no evidence as to, including from Mr. Forrest himself, as to how those terms, PD 251 and 252, affect his use of traffic crash reports. Just out of curiosity, isn't the confidential information on the 252? I don't think it is entirely clear from the record because I think the internal affairs officer basically testifies that these terms are obsolete, right? So when we're talking about 252, it's all electronic. It's obsolete because I was a prosecutor a billion years ago. These were paper forms. Right. So before, yes, they might have been relevant, right? But now they are not used. And even then, I just want to, again, stress how irrelevant this is because the internal affairs officer testifies that the traffic crash information is kept, to the extent it's kept on a numbered form at all, on a PD 10. And if you look at the specific and general orders, they reference PD 10s. So it would probably be on both though, because the 251 and 252, when they existed, were incident reports. So they would say what happened and who was there, and here's the contact information. Again, even going back to this prior regime, and engaging with that, even then, the internal affairs officer testifies that a 251 is only created when there's a crime in relation to the traffic incident. And we know from the record, I think it's undisputed, that Mr. Forrest has used thousands and thousands and thousands of traffic crash reports. So it cannot be that with all these traffic crash reports, there's a PD 251 because there's a crime attached to every traffic accident in D.C. So I don't want to belabor any of these points. I think the main point that I want to stress here is that the standard is that we view the evidence in the light most favorable to the government. And where we have a clear course of conduct, where Mr. Forrest is accepting cash, large amounts of cash, to give this information, this private information, to a third party, and he admits to the FBI that he knows he can't do that, he sends messages while he's committing offenses, indicating that he knows he can't do that, and that he's trying to hide it from his commander. He's sending it very encrypted messages, and he's accepting it in cash so they can't trace him afterwards. I mean, certainly, we think that a rational fact finder could find that he acted corruptly there. So if there are no further questions, we would ask that the convictions be approved. Thank you, counsel. Mr. Coburn, we'll give you the one minute that you asked for, for rebuttal. Thank you very much. The issue, and I'm sure this is already obvious to the panel, but the issue from our standpoint is not one of correctness. In other words, Mr. Burney's absolutely right. The testimony was that, you know, the PD 251, 252 rubric was obsolete, that the PD 10 was the thing that was at issue, and there was a lot of testimony about a couple of, two or three different general orders. That's not the issue from our standpoint. The issue is whether or not there was evidence from which any fact finder could reasonably conclude that Mr. Forrest harbored the necessary intent, the corrupt intent. And his understanding about the 251, 252, and I was probably a prosecutor during the same time period, Judge Pan, but, you know, that was his understanding, and that was unrebutted. I mean, he said it was, from my point of view, as clear as it could have been during the course of his exchange. I'm out of time. And I think the point's made. Thank you, counsel. Thank you to both counsel. We'll take this case under submission. Mr. Coburn, you were appointed by the court to represent the appellant in this matter, and the court thanks you for your assistance. My pleasure. Thank you.
judges: Srinivasan; Rao; Pan